UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ÁNGEL SILVERIO LINARES; IVELISSE ÁLAMO AGOSTO; and the CONJUGAL PARTNERSHIP SILVERIO-ÁLAMO,**

Plaintiffs,

**v.**

**LUMA ENERGY, LLC; LUMA ENERGY SERVCO, LLC; INSURANCE COMPANIES A, B, and C; and UNKNOWN DEFENDANTS X, Y, and Z,**

Defendants.

**CIVIL NO. ______________**

**RE: AGE DISCRIMINATION (ADEA); RACE AND NATIONAL ORIGIN DISCRIMINATION (TITLE VII); RETALIATION; POLITICAL DISCRIMINATION; PUERTO RICO ACTS NOS. 100, 80 AND 115; DEFAMATION; AND TORT DAMAGES**

**JURY TRIAL DEMANDED**

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COME NOW** plaintiffs Ángel Silverio Linares, his wife Ivelisse Álamo Agosto, and the Conjugal Partnership constituted between them, through the undersigned counsel, and respectfully state, allege, and pray as follows:

## I. NATURE OF THE ACTION

**1.** This is an action for damages and equitable relief arising from unlawful employment discrimination, retaliation, and defamation. Plaintiff Ángel Silverio Linares, a senior executive with an unblemished record, was abruptly and unlawfully terminated by his employer, Luma Energy, after more than four years of distinguished service and without a single prior disciplinary measure. His termination was the culmination of a sustained pattern of discriminatory and

retaliatory conduct driven by his age, his race, his Dominican national origin, his lack of political affiliation and refusal to favor the New Progressive Party, and his repeated opposition to unlawful and improperly politicized practices within the company.

**2.** Plaintiff was the only Black executive, and the only executive of Dominican national origin, on Luma's Operations Executive Team. He was fifty-one years old at the time of his discharge. Luma removed him and installed in his place a younger, White, Puerto Rican subordinate who was aligned with the very political faction that plaintiff had been directed to root out. The proffered justifications for that decision are pretextual, and the true motives were unlawful.

**3.** Plaintiff timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and exhausted all administrative remedies required by law. Having received a Notice of Right to Sue, he now comes before this Honorable Court to vindicate his rights under the federal and Puerto Rico statutes set forth below.

## II. JURISDICTION AND VENUE

**4.** This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question), because plaintiff's claims arise under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.

**5.** This Court has supplemental jurisdiction over plaintiff's Puerto Rico law claims under 28 U.S.C. § 1367, because those claims arise from the same common nucleus of operative facts as the federal claims and form part of the same case or controversy.

**6.** Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because the acts and omissions giving rise to the claims occurred in the District of Puerto Rico, where plaintiff was employed and where defendant conducts business.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

**7.** Within the applicable statutory period, plaintiff filed a charge of discrimination and retaliation against Luma with the EEOC, Charge No. 515-2026-00236, asserting discrimination based on age, race, and national origin, as well as retaliation. A copy of the charge is attached as Exhibit I.

**8.** On July 7, 2026, the EEOC issued plaintiff a Notice of Right to Sue on Charge No. 515-2026-00236. A copy is attached as Exhibit II. This Complaint is filed within ninety (90) days of plaintiff's receipt of that notice. Plaintiff has therefore satisfied all conditions precedent and administrative-exhaustion requirements necessary to bring this action.

## IV. THE PARTIES

**9.** Plaintiff Ángel Silverio Linares ("Silverio" or "plaintiff") is of legal age, married, an executive, and a resident of the Commonwealth of Puerto Rico. At the time of his termination he was fifty-one (51) years old, is Black, and is of Dominican national origin.

**10.** Co-plaintiff Ivelisse Álamo Agosto is of legal age, married to plaintiff, and a resident of Puerto Rico. She appears on her own behalf and to protect her interest in the Conjugal Partnership, which has suffered and continues to suffer damages as a result of defendant's unlawful acts.

**11.** The Conjugal Partnership Silverio-Álamo constituted between plaintiff and his wife appears as a plaintiff because the income, benefits, and other economic amounts lost by plaintiff accrued to the conjugal estate, and the economic damages claimed belong to that partnership.

**12.** Defendants Luma Energy, LLC and Luma Energy ServCo, LLC (collectively, "Luma" or "defendant") are affiliated entities that, under a public-private partnership contract with the Government of Puerto Rico and the Puerto Rico Public-Private Partnerships Authority, operate the Commonwealth's electric power transmission and distribution system. Upon information and belief, one of these entities hired plaintiff and the other paid his salary and benefits. Both entities share management, centrally control labor relations and personnel decisions, and operate as a single, integrated employer. Each of them, individually and jointly, was plaintiff's employer and is jointly and severally liable for the acts and omissions of its officers, managers, and supervisors under the doctrine of respondeat superior and applicable law.

**13.** Insurance Companies A, B, and C are entities of presently unknown name that, at the relevant time, had in force one or more insurance policies covering, in whole or in part, defendant's liability for the claims in this Complaint. Their correct names will be substituted once identified.

**14.** Unknown Defendants X, Y, and Z are natural or juridical persons who participated in, authorized, ratified, or tolerated the unlawful acts alleged herein, whose identities will be substituted once known. They include any parent, affiliate, or related entity of Luma that employed or paid plaintiff or exercised control over the terms and conditions of his employment.

## V. STATEMENT OF FACTS

### *A. Plaintiff's Exemplary Rise and Record at Luma*

**15.** Plaintiff joined Luma as Director, Fleet on February 22, 2021. By virtue of his outstanding performance, he rose quickly, and effective January 1, 2023, he was appointed Vice President, Operational Excellence. Plaintiff was thus continuously employed by Luma for approximately four (4) years and four (4) months, from February 22, 2021 until his termination on July 1, 2025.

**16.** Throughout his employment, plaintiff's performance evaluations met or exceeded Luma's standards. He was never disciplined. To the contrary, he received merit-based salary increases and performance bonuses year after year. At the time of his termination, his annual salary was approximately $300,000.00.

**17.** Plaintiff was the only Black member of Luma's Operations Executive Team and the only member of Dominican national origin. His initial immediate supervisor was Lawrence Kazmierski, then Senior Vice President of Operations, who is American, White, and older than plaintiff. In early 2024, Kazmierski was succeeded by Kevin Burgemeister, who is Canadian, White, and younger than plaintiff. Although Kazmierski ceased to be a Luma employee in or about late April to early May 2025, Luma retained him as a valued consultant after his employment ended. Thus, while Luma preserved its relationship with the older, White executive it valued, it terminated the plaintiff, who fell within the protected age class.

***B. Plaintiff's Mandate to Depoliticize Luma and the Resulting Friction***

**18.** One of plaintiff's principal mandates from the outset was to standardize procedures and eradicate the improperly politicized culture that Luma inherited from the Puerto Rico Electric Power Authority ("PREPA") and that remained ingrained in the company. It was well known within Luma that plaintiff was apolitical and results-oriented, and that he performed his duties rigorously and by the rules. Luma's Chief Executive Officer, Juan Saca, endorsed that mandate. On February 4, 2024, after plaintiff held his first meeting with Luma's line leaders, he wrote to Mr. Saca that he had delivered a message of zero tolerance for politicking ("politiquería") and would develop continuous-improvement and collaboration projects. Mr. Saca responded that same evening with rows of applause emojis, urged plaintiff to act with a firm hand ("Mano fuert[e] por favor"), and told him that the note had made his day ("Esta nota me ha hecho el d[í]a").

**19.** Precisely because of that apolitical, no-nonsense approach, plaintiff faced constant friction from officials openly identified with the New Progressive Party ("NPP"). That friction intensified after Kazmierski was succeeded as Senior Vice President of Operations in early 2024.

**20.** Plaintiff spearheaded an investigation into Luma's Eastern Division Manager, Wilfredo Jiménez, a staunch NPP activist who made personnel decisions based on political affiliation. Jiménez's conduct led to the departure of Fleet Coordinator Jeanni Scinsky. Plaintiff further disciplined Jiménez on three (3) separate occasions for failing to comply with Luma's purchasing policies and procedures.

**21.** In February 2022, Mariano Mier joined Luma as Vice President of Procurement and Contracts. Mier, an attorney by training, is White, Puerto Rican, and an NPP activist, and had served immediately before as Puerto Rico's Commissioner of Insurance. Unfamiliar with Luma's fleet micro-purchase procedures, and rather than defer to plaintiff's knowledge and expertise, Mier unnecessarily voided contracts in favor of a newly created policy that ultimately produced the very same result for which he had berated plaintiff's team. From then on, Mier waged a relentless campaign to undermine plaintiff's authority and expertise.

***C. The Diminution of Plaintiff's Role***

**22.** In January 2024, in addition to his position as Vice President, Operational Excellence, Luma assigned plaintiff the position of Vice President, Distribution Lines, purportedly on an interim basis. Plaintiff assumed both roles without objection, supervising Distribution Directors Andy Andreu and Alejandro González and all related personnel. He held both positions throughout 2024 without any additional compensation.

**23.** In January 2025, Luma stripped plaintiff of the Operational Excellence component of his position and relegated him to the lesser role of Vice President, Distribution Lines. Although his salary remained unchanged, his leadership role and responsibilities were drastically diminished. This reduction of duties constituted an adverse employment action.

***D. Plaintiff's Protected Opposition and Luma's Inaction***

**24.** By March 2025, after encountering obstacles at every level of the hierarchy, plaintiff escalated the matter of Luma's politicized culture to Luma's Chief Executive Officer, Mr. Saca. From the outset of the meeting it was evident that Mr. Saca was already aware of the problem; nevertheless, and to plaintiff's surprise, Mr. Saca identified plaintiff's own subordinates, Andy Andreu and Alejandro González, as the ringleaders, took no action to address plaintiff's concerns, notwithstanding his own endorsement of plaintiff's zero-tolerance message the year before, and instead backed political activist González behind plaintiff's back.

**25.** Concerned, plaintiff reported to his immediate supervisor, then Senior Vice President of Operations Kevin Burgemeister, that González and Andreu were meeting with Mr. Saca without plaintiff's knowledge. Burgemeister claimed to be unaware and assured plaintiff he would put a stop to it. Nothing changed.

**26.** In April 2025, Kathy Roure, Director of Low Voltage, remarked to plaintiff that he did not look well and told him to rely on his faith and that all would turn out for the best. Days later, she gave plaintiff a plaque that read "Pray, Trust, Wait" and a card bearing the biblical verse Isaiah 48:22, "there is no peace for the wicked." Shortly thereafter, Alejandro González—who did not have plaintiff's best interests at heart—also observed that plaintiff looked worried. Plaintiff explained that he had a great deal on his plate at work, that his wife was away, and that he was

having trouble sleeping. Plaintiff again brought these incidents to Burgemeister's attention, to no avail.

***E. The Defamatory Rumor Campaign***

**27.** In May 2025, plaintiff's work environment became still more hostile. Olga Ramos, who worked at Luma's Monacillo facility, began spreading rumors that an investigation was being conducted into supposed "actions" by plaintiff and by Ms. Nimsy Álamo that would purportedly lead to their termination. Plaintiff learned of these rumors through Edwin Rivera of Luma's Monacillo repair shop. Concerned, he brought the rumors to Burgemeister's attention, objected to the nature and premise of the purported investigation, and complained once more about the politically charged environment in which it was taking place. Once again, Burgemeister did nothing.

**28.** Ms. Nimsy Álamo—a distinct individual from co-plaintiff Ivelisse Álamo Agosto—is the niece of plaintiff's wife. She had been hired in September 2021 to fill the Fleet Coordinator vacancy, having been vetted and selected on her own merit by Luma's HR Recruiter, Marta Fuso. Plaintiff did not arrogate to himself the authority to hire her. Her hiring was a collective decision in which Human Resources participated, not plaintiff's decision alone. From the outset, plaintiff had disclosed that familial connection to his supervisor Kazmierski, even though the relationship did not violate the anti-nepotism policy then in effect, which did not cover nieces or nephews, much less the niece of an employee's spouse. Ms. Álamo performed her duties satisfactorily and without incident from her hire until Luma set out to remove plaintiff. Whatever inquiry Luma purported to conduct into the matter was not a bona fide investigation but a pretext to manufacture grounds for plaintiff's removal. The rumors that plaintiff had engaged in misconduct warranting his termination were therefore baseless and served a discriminatory and retaliatory purpose, and they falsely imputed misconduct to plaintiff before third parties.

***F. The Unlawful Termination and Replacement***

**29.** On July 1, 2025, Luma carried out its final act of discrimination and retaliation: it terminated plaintiff without cause and without any prior disciplinary measure, in reprisal for his having opposed the employer's unlawful practices—activity protected by law.

**30.** Following the termination, Luma replaced plaintiff with one of his own subordinates, Alejandro González, whom Luma first appointed on an interim basis and later confirmed permanently in the position, and who is White, Puerto Rican, a known NPP activist, and significantly less experienced than plaintiff in executive-level administration and personnel management. Plaintiff's supervisor, Burgemeister, was younger, White, and not Dominican; his direct replacement, González, was younger, White, and Puerto Rican.

**31.** The sequence of events shows that any reason offered or insinuated by Luma for the termination is mere pretext. Plaintiff was never disciplined, consistently met or exceeded performance standards, and was removed and replaced by individuals who were younger, of a different race and national origin, and aligned with the very political current that plaintiff—at Luma's own direction—had been tasked with eradicating. The temporal proximity between plaintiff's protected opposition and the adverse actions, together with the comparators' more favorable treatment, compels the inference of unlawful motive.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

***Age Discrimination — Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634***

**32.** Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

**33.** At the time of his termination, plaintiff was fifty-one (51) years old and belonged to the class protected by the ADEA (persons forty (40) years of age or older). He was qualified for his position and performed it to his employer's legitimate expectations.

**34.** Luma subjected plaintiff to adverse actions—including the diminution of his role and his termination—and replaced him with a younger person, while retaining an older, valued executive as a consultant. Plaintiff's age was the but-for cause of Luma's unlawful conduct.

**35.** As a direct result of the ADEA violation, plaintiff has suffered lost wages and benefits (back pay and front pay) and other economic damages. Luma's conduct was willful and in reckless disregard of plaintiff's federally protected rights, entitling him to liquidated damages under 29 U.S.C. § 626(b).

**SECOND CAUSE OF ACTION**
***Race and National Origin Discrimination — Title VII, 42 U.S.C. §§ 2000e et seq.***

**36.** Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

**37.** Plaintiff is Black and of Dominican national origin and was the only member of Luma's Operations Executive Team with those characteristics. Title VII prohibits employment discrimination based on race and national origin.

**38.** Luma subjected plaintiff to adverse treatment—the diminution of his role, a hostile work environment, and termination—because of his race and national origin, and replaced him with a person who is White and of Puerto Rican origin. Luma's stated reasons are pretextual.

**39.** As a result of the Title VII violation, plaintiff has suffered economic damages and mental and emotional distress. Luma's conduct was intentional, malicious, or in reckless indifference to

plaintiff's federally protected rights, warranting compensatory and punitive damages under 42 U.S.C. § 1981a.

## THIRD CAUSE OF ACTION
### *Retaliation — Title VII and the ADEA*

**40.** Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

**41.** Plaintiff repeatedly opposed practices he reasonably and in good faith believed to be unlawful and discriminatory, and he raised his concerns with Luma's upper management, including his immediate supervisor and the Chief Executive Officer. That opposition constitutes activity protected under Title VII and the ADEA.

**42.** In close temporal proximity to that protected activity, Luma took materially adverse actions against plaintiff, including the rumor campaign imputing misconduct to plaintiff and, ultimately, his termination. A causal connection exists between the protected activity and the adverse actions.

**43.** Luma's retaliation caused plaintiff economic and emotional damages for which defendant is liable, including under 42 U.S.C. § 1981a as to Title VII and 29 U.S.C. § 626(b) as to the ADEA.

## FOURTH CAUSE OF ACTION
### *Age, Race, and National Origin Discrimination — Puerto Rico Act No. 100 of June 30, 1959, 29 L.P.R.A. §§ 146–151*

**44.** Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

**45.** Act No. 100 prohibits an employer from discriminating against an employee on the basis of age, race, and national origin, among other categories. 29 L.P.R.A. § 146. Plaintiff belongs to these protected categories, was qualified for his position, was terminated, and was replaced by a younger person of a different race and national origin. Any reason Luma has offered or may offer for the termination is a pretext for discrimination.

**46.** By virtue of Luma's discriminatory conduct, plaintiff is entitled to the double penalty provided by Act No. 100, in addition to compensation for the damages suffered.

**FIFTH CAUSE OF ACTION**

***Political Discrimination — Puerto Rico Act No. 100 of June 30, 1959, 29 L.P.R.A. §§ 146–151***

**47.** Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

**48.** Act No. 100 prohibits an employer from discharging an employee, or otherwise discriminating against him with respect to the terms, conditions, or privileges of his employment, because of his political affiliation or political ideas. 29 L.P.R.A. § 146. Act No. 100 applies to private employers such as Luma.

**49.** Plaintiff is apolitical. It was well known within Luma that he did not favor the NPP and that he refused to make or tolerate personnel and business decisions based on political affiliation. Plaintiff's decision not to affiliate with or favor any political party is itself a political stance protected by Act No. 100.

**50.** Luma favored officials and employees identified with the NPP over plaintiff and subjected plaintiff to adverse treatment because of his lack of political affiliation and his refusal to favor the NPP. Luma allowed plaintiff's authority to be undermined, stripped him of the Operational Excellence component of his position, and terminated his employment. Luma then replaced him with Alejandro González, a known NPP activist whom Luma's Chief Executive Officer had backed behind plaintiff's back. Plaintiff's lack of political affiliation and his refusal to favor the NPP were motivating factors in those decisions.

**51.** This cause of action is pleaded in addition to, and in the alternative to, the other causes of action in this Complaint, as permitted by Rule 8(d) of the Federal Rules of Civil Procedure. As a

result of Luma's political discrimination, plaintiff is entitled to compensation for the damages suffered and to the double penalty provided by Act No. 100.

**SIXTH CAUSE OF ACTION**

***Wrongful Discharge — Puerto Rico Act No. 80 of May 30, 1976, 29 L.P.R.A. §§ 185a–185m***

**52.** Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

**53.** Plaintiff was an employee for an indefinite term. Luma discharged him without just cause, as that term is defined in Act No. 80. Plaintiff is therefore entitled to the statutory severance indemnity (mesada) provided by that Act. Plaintiff was employed by Luma from February 22, 2021 until his discharge on July 1, 2025, a period of four (4) full years of service, at an annual salary of approximately $300,000.00. Because plaintiff was hired after January 26, 2017, his mesada is governed by 29 L.P.R.A. § 185a as amended by Act No. 4-2017: three (3) months of salary plus two (2) weeks of salary for each full year of service, subject to a cap of nine (9) months of salary, with one (1) month deemed to consist of four (4) weeks. The indemnity is computed on the basis of the highest rate of salary earned by plaintiff within the three (3) years immediately preceding his discharge. 29 L.P.R.A. § 185d. Applying that formula to a weekly salary of approximately $5,769.23, plaintiff's mesada is preliminarily estimated at no less than $115,384.62, consisting of twelve (12) weeks for the three-month component and eight (8) weeks for four (4) full years of service, and the precise amount will be established through discovery based on plaintiff's applicable base compensation and payroll records. This cause of action is pleaded in the alternative to plaintiff's discrimination and retaliation claims under Acts Nos. 100 and 115, in the event that the trier of fact finds the discharge unjustified but not discriminatory or retaliatory.

**SEVENTH CAUSE OF ACTION**

***Retaliation — Puerto Rico Act No. 115 of December 20, 1991, 29 L.P.R.A. §§ 194a–194b***

**54.** Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

**55.** Act No. 115, as amended by Act No. 169-2014, protects an employee who offers or attempts to offer, verbally or in writing, any testimony, expression, or information through the employer's internal procedures or before any employee or representative in a position of authority. 29 L.P.R.A. § 194a(a). This protection stands independently of the anti-retaliation provisions of Title VII and the ADEA. Plaintiff engaged in activity protected by Act No. 115 when he (a) raised Luma's politically charged culture with the Chief Executive Officer, Mr. Saca, in March 2025; (b) reported to his supervisor, Burgemeister, that his subordinates González and Andreu were meeting with Mr. Saca without his knowledge; and (c) objected to Burgemeister, in May 2025, about the rumored investigation concerning Ms. Nimsy Álamo and the politically charged environment surrounding it. Mr. Saca and Burgemeister each held a position of authority within Luma. Approximately four months after the March 2025 meeting, and within weeks of plaintiff's May 2025 complaints, Luma terminated his employment. Act No. 115 expressly prohibits such conduct and entitles plaintiff to the damages caused, plus the double penalty it provides.

## EIGHTH CAUSE OF ACTION

***Defamation — Puerto Rico Libel and Slander Act, Act of February 19, 1902, 32 L.P.R.A. §§ 3141–3149, and Art. II, § 8 of the Constitution of the Commonwealth of Puerto Rico***

**56.** Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

**57.** Luma's officers, agents, and employees published to third parties statements imputing to plaintiff improper "actions" that would purportedly lead to his termination. Those statements were false, were made with knowledge of their falsity or in reckless disregard of the truth, were communicated to persons other than plaintiff, were not privileged, and directly tended to injure plaintiff in his office, profession, and executive standing, as contemplated by the Puerto Rico Libel and Slander Act, 32 L.P.R.A. §§ 3141 et seq.

**58.** As a direct result of these defamatory statements, plaintiff suffered harm to his good name and professional reputation, as well as mental distress, for which Luma is liable.

**NINTH CAUSE OF ACTION**

***Tort Damages — Article 1536 of the Puerto Rico Civil Code of 2020, 31 L.P.R.A. § 10801***

**59.** Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

**60.** Luma's wrongful, negligent, and intentional acts caused plaintiff's wife and the Conjugal Partnership, who have no cause of action of their own under the employment statutes invoked above, economic damages, mental and emotional distress, and impairment of their peace and well-being, for which defendant is obligated to respond. Plaintiff likewise asserts this cause of action for any damages caused by Luma's conduct that are not compensable under those statutes.

## VII. DAMAGES

**61.** As a direct and proximate result of Luma's unlawful conduct, plaintiff has suffered and continues to suffer past and future lost wages, bonuses, and fringe benefits (back pay and front pay), preliminarily estimated, subject to proof at trial, at no less than one million dollars ($1,000,000.00). These economic losses arise from a single course of conduct and are pleaded under each of the federal and Puerto Rico statutes invoked herein as alternative and cumulative bases for recovery; plaintiff does not seek duplicative recovery of the same economic loss under more than one statute.

**62.** Plaintiff, his wife, and the Conjugal Partnership have suffered severe mental and emotional distress, as well as injury to plaintiff's professional reputation, estimated at no less than one million dollars ($1,000,000.00).

**63.** Luma's intentional, malicious, and reckless disregard of plaintiff's rights warrants punitive damages under Title VII and liquidated damages under the ADEA, as well as the double penalty provided by Puerto Rico Acts Nos. 100 and 115. These enhanced and statutory damages are pleaded in the alternative to the extent any applicable law prohibits their cumulative award for the same conduct. Plaintiff further avers that the statutory cap on compensatory and punitive damages under 42 U.S.C. § 1981a does not limit plaintiff's recovery of back pay, front pay, or liquidated damages under the ADEA, nor plaintiff's recovery of compensatory damages, the double penalty, or the severance indemnity available under Puerto Rico Acts Nos. 100, 115, and 80 and the Puerto Rico Civil Code.

## VIII. DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all issues so triable of right, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against defendant, granting the following relief:

a) Declaring that Luma violated the ADEA, Title VII, and Puerto Rico Acts Nos. 100, 80, and 115;

b) Awarding plaintiff past and future lost wages and benefits (back pay and front pay) in an amount to be proven at trial and no less than one million dollars ($1,000,000.00);

c) Awarding plaintiffs compensatory damages for mental and emotional distress and injury to reputation in an amount no less than one million dollars ($1,000,000.00);

d) Awarding liquidated damages under the ADEA, punitive damages under Title VII, and the double penalty provided by Puerto Rico Acts Nos. 100 and 115;

e) Ordering plaintiff's reinstatement or, in the alternative, front pay in lieu of reinstatement;

f) Awarding the statutory severance indemnity (mesada) under Act No. 80, in an amount of no less than $115,384.62, subject to proof at trial, pleaded in the alternative to the remedies sought under Acts Nos. 100 and 115, to the extent required by law;

g) Awarding attorneys' fees, costs, expenses, and pre- and post-judgment interest as provided by law; and

h) Granting any other relief that the Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 2 day of October 2026.

**/s/ Marcelle D. Martell Jovet**
Marcelle D. Martell Jovet
USDC-PR No. 211807
Despacho Legal Dorna-Llompart
1353 Luis Vigoreaux Ave., PMB 805, Guaynabo, PR 00969
Tel.: (787) 717-6691
Email: mmartelljovet@gmail.com